J-S10021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GAVIN LAWRANCE NICKEL | : | |
| | : | |
| Appellant | : | No. 1115 MDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered July 15, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002841-2023

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.: **FILED: JULY 13, 2026**

Gavin Lawrance Nickel ("Nickel") appeals the judgment of sentence of three to twenty-three months of incarceration imposed following the revocation of his probation for technical violations. The Cumberland County Court of Common Pleas ("trial court") resentenced Nickel pursuant to 42 Pa.C.S. § 9771, a statute recently amended by Act 44 of 2023 ("Act 44"). Nickel raises challenges to the legality and discretionary aspects of his resentence. Upon review, we vacate his judgment of sentence and remand for resentencing.

**Overview of Pertinent Sections of Section 9771**

We begin with an overview of the statute pertaining to resentences imposed following a revocation of probation. At the time of Nickel's resentencing, section 9771, as amended by Act 44, provided as follows.

Subject to the limitations imposed by subsections (b.1) and (c), upon revocation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing," including any applicable mandatory minimum sentence the Commonwealth may seek for the court to impose upon resentencing, with "due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). The trial court's discretion to resentence a probation violator to a period of total incarceration, however, is cabined by section 9771(c). *Id.* § 9771(c); *see also Commonwealth v. Seals*, 353 A.3d 747, 757-59 (Pa. Super. 2026) (en banc). Section 9771(c) expressly presumes "against total confinement for technical violations of probation." 42 Pa.C.S. § 9771(c). Section 9771(c) then sets forth two analytical components: subsection (c)(1), which contains the prerequisites to imposing a sentence of total confinement, and subsection (c)(2), which prescribes the time limitations upon such sentences. *See id.* § 9771(c)(1)-(2); *Seals*, 353 A.3d at 764.

To be able to exercise its discretion to sentence the violator to a term of incarceration at all, the trial court first must determine whether the Commonwealth has established the criteria in section 9771(c)(1). *Seals*, 353 A.3d at 764. Subsection (c)(1) presents three circumstances wherein a court may resentence a defendant to a period of total confinement following revocation of probation, which include: (i) "the defendant has been convicted of another crime," (ii) "the court finds by clear and convincing evidence that

the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means," or (iii) "the court finds by a preponderance of the evidence that the defendant committed a technical violation" and any one of the circumstances in (iii)(A)-(F) applies. *See* 42 Pa.C.S. § 9771(c)(1)(i)-(iii).[1]  These are "statutory prerequisites" that unlock the trial court's authority to impose a sentence of total confinement. *Seals*, 353 A.3d at 763.

If the court is resentencing a defendant for a technical violation of probation pursuant to subsection (c)(1)(ii) or (iii), the court must turn to subsection (c)(2), which directs it to consider the probationer's employment status and to select the applicable maximum length of the sentence. *See id.* at *7, 12, 19; *see also* 42 Pa.C.S. § 9771(c)(2).  The statute authorizes a maximum period of fourteen days for a first technical violation and a maximum period of thirty days for a second technical violation.  42 Pa.C.S.

---

[1] Of relevance to one of Nickel's claims on appeal, section 9771(c)(1)(iii)(F) provides:

> The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means.  For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.

42 Pa.C.S. § 9771(c)(1)(iii)(F).

- 3 -

§ 9771(c)(2)(i), (ii). "For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing." *Id.* § 9771(c)(2)(iii).

**Case History**

Nickel's original conviction stems from violence he inflicted upon his girlfriend, Katey Huntington ("Huntington"). In October 2023, Huntington appeared at the police station seeking safe housing assistance for her and her children. An officer observed dark purple bruising around her left eye socket, red marks around her neck, and dark bruising on her thigh. Huntington reported that Nickel struck her multiple times in her head and body, causing dizzy spells, and restricted her breathing with his hands. Police charged Nickel with aggravated assault, strangulation, and simple assault at docket number CP-21-CR-0002841-2023 ("2841-2023").

Nickel already had pending assault charges at docket number CP-21-CR-253-2023 ("253-2023") for violence he perpetrated upon Huntington on January 17, 2023. Following the court's denial of the Commonwealth's motion to consolidate the instant case with docket number 253-2023, and two mistrials with hung juries when the Commonwealth tried 253-2023 separately, Nickel resolved both cases with a negotiated guilty plea. On December 4,

2024, he pled guilty to harassment as a summary offense at 253-2023 and simple assault as a second-degree misdemeanor in the instant case.[2]

The trial court sentenced Nickel in both cases on January 21, 2025. The original sentence in the instant case was supervised probation for twenty-one months, with the conditions "that he be and remain on good behavior, that he comply with the standard conditions of probation and parole as published and adopted by this [c]ourt, that he successfully complete the AMEND Batterers Program [("AMEND")], and that he have no contact whatsoever with the victim in this case, except such contact as may be allowed by his current custody order or agreement." Sentencing Order, 1/28/2025, at 1.

On March 4, 2025, the Commonwealth filed a petition to revoke Nickel's probation, alleging that Nickel failed to provide a drug screen sample on February 20, and March 4, 2025, and tested positive for methamphetamine on January 24, and February 21, 2025. Petition for Revocation of Probation, 3/4/2025, at 1. Nickel's counsel asserted that Nickel was "admitting the violations" and deferring to the plan to recommit advanced by his probation officer, P.O. Gilfus. N.T., 4/22/2025, at 2-3. P.O. Gilfus clarified that the Commonwealth was "seeking an adjudication for the purposes of Act 44." *Id.* at 3. The trial court confirmed with Nickel that he understood that under "all this whole new probation stuff" his admission "counts against [him]" because

---

[2] 18 Pa.C.S. § 2701(a)(1).

- 5 -

it "would get worse" if he incurred another violation in the future. *Id.* The trial court did not revoke his probation at that time but recorded the admission in its written order in the event of future violations. Trial Court Order, 4/24/2025, at 1.

Just seven days after Nickel tendered his admission, the Commonwealth filed a second petition to revoke his probation, averring that Nickel was arrested on April 15, 2025, and had simple assault charges held over for court. Petition for Revocation of Probation, 4/29/2025, at 1. Additionally, the Commonwealth averred that the AMEND program unsuccessfully discharged Nickel. *Id.* The Commonwealth alleged that the incident and discharge violated probation conditions one (failing to remain arrest free) and two (failing to remain on good behavior and refraining from dangerous behavior), as well as the condition to successfully complete the AMEND batterers program. *Id.*

At the May 27, 2025 revocation hearing, P.O. Gilfus informed the trial court that Nickel had pending charges for simple assault and the victim was his mother. N.T., 5/27/2025, at 5. Nickel's counsel clarified that these charges were in addition to another set of domestic violence related charges Nickel had incurred before the court had imposed the probation order in the instant case, wherein the alleged victim was a new girlfriend. N.T., 5/27/2025, at 2-5. After posting bail in the case regarding the new girlfriend, Nickel had been in the community for the past month working and staying

clean. *Id.* at 4. Nevertheless, the new pending simple assault charges caused AMEND to discharge him. *Id.* at 2. Nickel's counsel requested a continuance because the case with new charges was "still open." *Id.* She admitted on Nickel's behalf, however, that AMEND discharged him, which constituted a violation of probation. *Id.* P.O. Gilfus requested thirty days of incarceration in Cumberland County Prison based on the nature of the violations but agreed to help Nickel explore readmission to AMEND. *Id.* at 3, 5. Finding that Nickel had remained in the community for about a month "without any issues," the trial court entered an order deferring action on the petition until June 17, 2025, and directed Nickel to explore the possibility of readmission to AMEND or another program. *Id.* at 6-7; Trial Court Order, 5/27/2025, at 1.

When the hearing resumed on June 17, 2025, the prosecutor indicated that Nickel had not remained in contact with P.O. Gilfus, which stymied any effort for him to reenroll with AMEND. *Id.* at 2-3. The Commonwealth recommended that Nickel be incarcerated for the probation violation, particularly because police were investigating Nickel as a suspect in a new rape case. *Id.* at 3-4. No charges had been filed at that point as police had been unable to contact him to serve search warrants for his cell phone, his DNA, and other items. *Id.* at 3. When Nickel was served that morning at the courthouse, he claimed that he no longer lived at that address and never told P.O. Gilfus, but he agreed to cooperate with police regarding the search warrants for items in his home. *Id.* at 3-4. P.O. Gilfus requested that the

trial court invoke what he characterized as the public safety exception in Act 44; according to P.O. Gilfus, this would allow the trial court to incarcerate Nickel at a length based upon its discretion. *Id.* at 5. In support, P.O. Gilfus cited Nickel's prior "adjudicated violation," his discharge from AMEND, his failure to remain in contact with him to try to work with AMEND, and his violent conduct (as established by his pending charges progressing past the preliminary hearing stage). *Id.* at 5-8. The trial court asked Nickel's counsel whether he admitted that he was "in violation of his probation." *Id.* at 6. His attorney responded affirmatively. *Id.* The trial court indicated that it wanted to see if there were new charges filed in the rape investigation before sentencing him. *Id.* at 8. It revoked his probation and recommitted Nickel to Cumberland County Prison pending resentencing. Trial Court Order, 6/17/2025, at 1. *Id.*

During the very brief resentencing hearing on July 15, 2025, the trial court asked defense counsel to confirm that "since [Nickel] has been on probation, he has two new domestic violence charges," and counsel responded affirmatively. N.T., 7/15/2025, at 2. The trial court acknowledged it possessed a memo from P.O. Gilfus.[3] *Id.* Defense counsel requested that the trial court resentence Nickel to time served, noting that he had been incarcerated since June 17, 2025, and the guidelines called for restorative

---

[3] This memo is not contained in the certified record.

sanctions to three months' incarceration. *Id.* Nickel declined his opportunity for allocution. *Id.* The trial court explained that it would not sentence him to time served "because getting two new offenses while you're on probation for a simple assault is not indicating success with probation." *Id.* Nickel interjected, pointing out that there "was only one violation on the PV." *Id.* The court responded, "Well one new domestic violence charge is one too many new domestic violence charges," and its decision stood "whether it was one or whether it was two." *Id.* at 3. It then resentenced Nickel to incarceration in the Cumberland County Prison for not less than three months nor more than twenty-three months. *Id.* The court authorized work release, awarded credit for time served awaiting resentencing, ordered as conditions of release on parole that he be and remain on good behavior, comply with the court's standard conditions of probation and parole, have absolutely no contact with the victim, and complete a long-term anger management program. *Id.* The court noted that his ability to reenroll in AMEND was unclear, but that the court intended for him to complete a program of similar duration and intensity.[4] *Id.* The court did not make any specific findings pertaining to section 9771(c) on the record.

---

[4] Subsections (c)(1) and (2) of 9771 pertain to sentences of total confinement, not other sentencing alternatives, including partial confinement. *See* 42 Pa.C.S. § 9771(c)(1)-(2). We assume for purpose of our analysis that the trial court's sentence was one of total confinement, as both parties and the trial court refer to the sentence in such a manner without any further

*(Footnote Continued Next Page)*

Nickel filed a post-sentence motion, arguing without elaboration that he was seeking to modify his standard range sentence. Nickel's Post-Sentence Motion, 7/25/2025, ¶¶ 3-4. Following a hearing, the trial court denied the motion except to the extent that it awarded additional time credit for ten days in April 2025. Trial Court Order, 8/28/2025, at 1.

This appeal by Nickel followed. Both the trial court and Nickel complied with Pa.R.A.P. 1925. Nickel's concise statement challenged only his maximum sentence and expressly described the challenge as being to the discretionary aspects of his revocation sentence. Concise Statement, 8/29/2025, ¶¶ 3, 7-8. On appeal, Nickel raises the issue that he raised in his concise statement: "Measured against the Sentencing Guideline standard range and the kind of probation violation committed, was [Nickel's] revocation sentence, which exceeded the original sentence, inordinate; and thus, the court arriving at a manifestly unreasonable decision?" Nickel's Brief at 6.

In its Rule 1925 opinion, the trial court addressed section 9771(c) directly. It explained that it recorded Nickel's first admission to the missed and positive drug tests without imposing any further sanction at the time to preserve the adjudication for purposes of section 9771(c). Trial Court Opinion,

---

discussion. Under our sentencing code, sentencing schemes that include work release from confinement may take on various forms. *See, e.g.,* 42 Pa.C.S. § 9755(c)(1) (relating to partial confinement with release for employment); *id.* § 9755.1 (relating to court's authority to temporarily release prisoners from county correctional institutes).

9/12/2025, at 4, 9. It then found, based upon counsel's admission on Nickel's behalf at the June 17, 2025 revocation hearing, that Nickel admitted to the probation violations alleged in the second petition, which included discharge from AMEND and receiving new criminal charges. *Id.* The court revoked Nickel's probation as a result. *Id.*

The trial court observed that Nickel's counsel admitted at the June 17, 2025 hearing that Nickel "received two new sets of domestic violence charges," although Nickel personally "contested whether he received only one, rather than two, new sets of domestic violence charges." *Id.* at 9 & n.13. The trial court found the number of pending charges "to be a distinction without a difference," and noted that "in fact, [Nickel] received three new sets of domestic violence charges while he was on probation supervision in this case." *Id.* at 9 & n.14. What was significant to the trial court was that Nickel, "while on probation supervision for committing a crime of domestic violence," demonstrated that he was unable to take his treatment regimen seriously (citing the AMEND discharge), was not taking positive rehabilitative measures in his life (citing the drug screens), and would not be successful on probation (citing the domestic violence arrests), thereby warranting revocation of his probation and the sentence it imposed. *Id.* at 9-10. Echoing the statutory language of section 9771(c)(1)(ii) without citing it directly, the trial court "concluded by clear and convincing evidence that [Nickel] committed multiple technical violations involving an identifiable threat to public safety, and that

[Nickel] could not be safely diverted from total confinement through less-restrictive means." *Id.* at 10.[5] By the trial court's calculation, Nickel committed at least five technical probation violations—missed drug testing, positive tests for methamphetamine, unsuccessful discharge from AMEND; and "two separate sets of new domestic violence charges"—and this conduct demonstrated that "there was no alternative but to impose a sentence of total confinement." *Id.* Invoking section 9771(c)(2)(iii), the court "exercised its discretion to impose a sentencing alternative originally available" to it. *Id.*

Using the updated presentence investigation report and the sentencing guidelines, the trial court imposed a sentence "at the top of the standard range" to aid Nickel in reforming his conduct while protecting the community at large. *Id.* at 11. While the new sentence of incarceration plus supervision was longer than the term of the original probation sentence, the trial court explained that it selected this sentence because Nickel was unsuccessful under supervision "in multiple ways, most substantially by his being charged with several sets of new crimes involving violence." *Id.*

### Waiver and Classification of Sentencing Challenges

Before we address the merits of Nickel's claims, we consider the Commonwealth's argument that Nickel has waived appellate review in its

---

[5] It also noted that after it sentenced Nickel, he had incurred new charges while incarcerated by allegedly possessing the controlled substance K2 in the Cumberland County Prison. *Id.* at 5 n.10, 10 n.17.

entirety by failing to "preserve his claim related to the purported error on the part of the trial court in sentencing [him] to a period of total confinement for probation violations" by failing to object at sentencing or in his post-sentence motion. Commonwealth's Brief at 12-13. Pursuant to ***Commonwealth v. Slaughter***, 339 A.3d 456 (Pa. Super. 2025), *overruled by* ***Seals***, 353 A.3d at 764, the Commonwealth contends that this failure is fatal to Nickel's appeal. ***Id.***

Although we find certain aspects of Nickel's arguments waived (as discussed infra), we decline to find global waiver. While this case was pending, an en banc panel of this Court overruled ***Slaughter*** to the extent that it applied the analysis in ***Commonwealth v. Schutzues***, 54 A.3d 86 (Pa. Super. 2012), without recognizing that our Supreme Court's intervening superseding authority had repudiated ***Schutzues***' analysis of section 9771(c). ***See Seals***, 353 A.3d at 763 (citing ***Commonwealth v. Barnes***, 151 A.3d 121 (Pa. 2016), and ***Commonwealth v. Prinkey***, 277 A.3d 554 (Pa. 2022)). Consistent with that authority, ***Seals*** directs that the classification of a challenge to a resentence following probation revocation depends on the specifics of the appellant's challenge. ***Id.*** at 763. To the extent that an appellant challenges the trial court's authority to impose a sentence of total confinement based upon its failure to adhere to the mandatory limits imposed by section 9771(c), the claim presents a challenge to the legality of the sentence imposed that is not subject to issue preservation requirements. ***Id.***

On the other hand, if the appellant challenges the manner in which a trial court exercises its discretion within the confines of its authority, the challenge is addressed to the discretionary aspects of sentencing, which contains particular issue preservation requirements. *Id.* at 763 n.21. Nickel presents both types of challenges, which we address individually.

**Nickel's Arguments**

Although Nickel purports to present one issue on appeal, we discern multiple components to his argument. We address each seriatim, as they have distinct legal standards.

<u>Excessiveness of Maximum Sentence Compared to Nature of Violations</u>

First, Nickel argues that despite his overall standard range sentence, his maximum sentence of twenty-three months of total confinement is excessive as compared to the nature of his technical violations. Nickel's Brief at 10-12, 15-16, 30-32. He argues that sentencing him to close to the statutory maximum for these technical violations is unreasonable and indicative of a "harsh and excessive sentence, disproportionate to the underlying violations or circumstances" that is "more retributive than reformative in nature." *Id.* at 32 (citations omitted).

This argument implicates the discretionary aspects of his sentence. "An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission." *Commonwealth v. Kalichak*, 943 A.2d 285, 289

(Pa. Super. 2008). An appellant challenging the sentencing court's discretion is entitled to review by this Court if s/he: (1) timely filed a notice of appeal; (2) properly preserved the issue at sentencing or in a post-sentence motion; (3) complied with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) presents a substantial question that the sentence appealed is not appropriate under the Sentencing Code by advancing a colorable argument that the sentence is inconsistent with a specific provision of the Sentencing Code, contrary to the fundamental norms underlying the sentencing process, or otherwise incongruent with 42 Pa.C.S. § 9781(b). **Commonwealth v. Schroat**, 272 A.3d 523, 527 (Pa. Super. 2022).

We are unable to review Nickel's argument regarding the trial court's exercise of discretion because he has not satisfied all of the above requirements. Specifically, Nickel failed to preserve this argument at sentencing or in his post-trial motion. His post-trial motion, while filed timely, failed to set forth **any** reason why the trial court should modify the sentence, let alone explain how it abused its discretion. **See** Motion to Modify Sentence, 7/25/2025, at ¶¶ 1-5.[6] The mere filing of a motion does not preserve a

_____

[6] To the extent that Nickel presented a specific argument before the trial court orally at the August 28, 2025 proceeding, we have no record of this argument. Nickel ordered production of transcripts four times, but none of these requests

*(Footnote Continued Next Page)*

challenge to the discretionary aspects of sentence for appeal; instead, the appellant must afford the trial court the opportunity to address the factual and legal basis of the issue in the first instance. *See Commonwealth v. Rivera*, 238 A.3d 482, 499 (Pa. Super. 2020) (concluding appellant waived discretionary aspects challenge by presenting the same general legal theories with different rationales below).

Consideration of Mere Arrests

Nickel's next argument pertains to the trial court's consideration of his arrests to revoke his probation and to justify imposing a longer sentence. Nickel's Brief at 16-26. Nickel contends that the trial court's on-the-record commentary is replete with references to his arrests to justify revoking his probation and imposing a sentence near the statutory maximum. *Id.* at 16-17, 21 (citing N.T., 5/27/2025, at 4-5; N.T., 7/15/2025, at 2-3). He raises

---

ordered transcription of the August 28, 2025 proceeding and a transcript does not otherwise appear in the certified record. "This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006). Although this Court notified the lower court that it had sent only one of the transcripts requested by Nickel as part of the certified record, prompting the clerk to certify a supplemental record, this Court will not request that the transcription of proceedings in the first instance on its own accord. Pursuant to Rule 1911 of our Rules of Appellate Procedure, it is the appellant's responsibility to order any transcript necessary for the resolution of the issues raised on appeal. *Id.* If this Court cannot resolve a claim in the absence of the necessary transcript, we deem the issue waived for the purpose of appellate review. *Id.*

several arguments in support of his claim that this was error, which we address separately.

First, he argues that consideration of arrests runs counter to the language of section 9771(c)(1)(i), which requires a conviction. *Id.* at 16; *see also* 42 Pa.C.S. 9771(c)(1)(i) (permitting a sentence of total confinement if "the defendant has been convicted of another crime"). Statutory interpretation presents a question of law, of which we engage in a de novo review. *Seals*, 353 A.3d at 767.

As presented by Nickel, this argument fails. He relies upon the language of section 9771(c)(1)(i) in isolation and tries to extend it to mean that in the absence of a conviction, his conduct that resulted in his arrest cannot be a basis for a sentence of total confinement. He makes this bald argument without offering any statutory analysis, considering the additional provisions of section 9771(c), or citing to a post-Act 44 case construing the statute in the manner he proposes. *See Seals*, 353 A.3d at 762 ("We consider the statutory language not in isolation, but within the context in which it appears.") (citation omitted). Section 9771(c)(1)(i) authorizes the trial court to impose a sentence of total confinement upon revocation of probation when the defendant has been convicted of another crime. *See* 42 Pa.C.S. § 9771(c)(1)(i). Nothing in the language of subsection (c)(1)(i) or the remainder of section 9771, however, suggests that a trial court is prohibited from considering the conduct underlying an arrest without a conviction as a

basis to revoke probation or as a sentencing factor. Nickel offers no statutory analysis and does not cite any post-Act 44 decision construing this language beyond what it says on its face. As such, we construe the statute to mean what it says: section 9771(b) requires "proof of the violation of specified conditions of the probation to revoke," and section 9771(c)(1) presumes that incarceration of any length is not warranted unless the defendant is convicted of another crime or the Commonwealth offers and proves each component of (ii) or (iii) to the prescribed burden of proof. *See* 42 Pa.C.S. § 9771(b), (c)(1)(i)-(iii).

Next, Nickel argues that pursuant to *Commonwealth v. Berry* and *Commonwealth v. Fitzgerald*, relying upon criminal conduct that did not result in a conviction is an impermissible sentencing factor that lacks value as a probative matter. *Id.* at 21, 29 (citing *Commonwealth v. Berry*, 323 A.3d 641 (Pa. 2024), and *Commonwealth v. Fitzgerald*, 2025 WL 2315296 (Pa. Super. Aug. 12, 2025) (non-precedential decision), *reconsideration granted and case superseded by* *Commonwealth v. Fitzgerald*, 2026 WL 832882 (Pa. Super. Mar. 24, 2026) (non-precedential decision)).

To begin, Nickel's reliance upon our initial *Fitzgerald* decision is unavailing because, as noted above, this Court reconsidered, withdrew, and filed a new decision that superseded the cited *Fitzgerald* decision after Nickel filed his brief. In its later decision following reconsideration, this Court concluded that the trial court did not err in determining that Fitzgerald

- 18 -

committed a violation or in revoking his probation based upon its finding that he committed harassment based upon the evidence presented at the revocation hearing, even though he was never arrested, charged, or convicted of that criminal conduct. *Fitzgerald*, 2026 WL 832882, at *3, 5-6; *see also Berry*, 323 A.3d at 654-55 (reserving for another day and not reaching the parties' alternative arguments concerning whether a trial court may consider a prior arrest where the facts underlying the arrest are established by preponderance of the evidence); *Commonwealth v. Brown*, 469 A.2d 1371, 1377 (Pa. 1983) (trial court may revoke probation prior to a criminal trial with proof of criminal behavior by preponderance of the evidence without offending due process).

Further, to the extent that Nickel invokes *Berry* in support of his argument that the trial court imposed an excessive sentence to punish him for being arrested for domestic-violence-related crimes while on probation, this constitutes a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Davis*, 341 A.3d 808, 812 (Pa. Super. 2025) (holding that claim that trial court impermissibly factored Davis' record of arrests without concomitant convictions into his sentence challenges the sentencing court's exercise of discretion, and not its legal authority to impose a sentence) (citing, inter alia, *Berry*, 323 A.3d at 643). As we already discussed, Nickel failed to preserve any challenge to the discretionary aspects of his sentence by filing a boilerplate and vague post-sentence motion. Nickel's invocation of

*Berry*, however, finds more purchase within the context of the legality-of-sentence argument we address next.

Statutory Prerequisites Not Met

Nickel's final arguments are addressed to the legality of his sentence. *See Seals*, 353 A.3d at 763. Although he intertwines two arguments, we concentrate our efforts on the one we find dispositive. Therein, Nickel resurrects his invocation of *Berry*, arguing that the trial court erred by counting his arrests as violations of his probation at all based upon their lack of probative value. Nickel's Brief at 26-29.[7] We review challenges to the legality of sentence under a de novo standard, and, as stated above, such challenges are not subject to issue preservation requirements. *Id.*

Section 9771(c)(1)(ii), upon which the trial court relied, permits it to impose a sentence of total confinement when it "finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted

---

[7] From what we are able to discern, Nickel further contends that the trial court miscalculated his technical violations for purposes of section 9771(c)(1)(iii)(F) and (2); he then groups the conduct he contends constituted "the same episode of events" and advocates for a sentence under section 9771(c)(2)(ii) for a second technical violation. *See* Nickel's Brief at 10-11, 21-29. In so arguing, however, he fails to recognize that the trial court applied section 9771(c)(1)(ii) as the basis to impose a sentence of total confinement. *See* Trial Court Opinion, 9/12/2025, at 12. Thus, whether any of his violations stem from the same episode of events is irrelevant, as the General Assembly expressly included the "same episode" language only under section 9771(c)(1)(iii), and Nickel makes no argument that this language applies to revocations under subsection (ii). *See* 42 Pa.C.S. § 9771(c)(1)(iii).

from total confinement through less restrictive means." 42 Pa.C.S. § 9771(c)(1)(ii). While not the sole reason for its decision, the record reflects that Nickel's arrests plainly influenced the trial court's decision to revoke his probation and sentence him to total confinement. *See, e.g.,* N.T. 7/15/2025, at 2 (addressing Nickel directly and stating that it was "not going to give you time served because getting two new offenses while you're on probation for a simple assault is not indicating success with probation."); Trial Court Opinion, 9/12/2025, at 5 n.10 (listing various charges incurred by Nickel across four dockets).[8] Obviously, if Nickel did engage in the conduct alleged in the various charges, this would be evidence of his lack of success on probation, and the sheer number and nature of the charges certainly raises the proverbial red flag. However, as our Supreme Court in *Berry* observed, while the "fact of an arrest may generate speculation," it "ultimately means nothing." *Berry*, 323 A.3d at 654. Arrests without convictions are unproven conduct without probative value and "happen to the innocent as well as the guilty." *Berry*, 323 A.3d at 643, 654 (cleaned up). Simply put, whether the trial court considers an arrest to support the decision to revoke probation or the decision to impose a sentence of incarceration, the fact of an arrest alone cannot

_____

[8] Complicating our review of this case is that when references are made to Nickel's pending charges and arrests on the record, in the trial court's opinion, and in the parties' briefs, the trial court/parties are often unclear regarding which particular set of charges are being referenced. Ultimately, the only charge or arrest listed in a revocation petition was the April 2025 simple assault against Nickel's mother.

- 21 -

"support any adverse inferences," and lacks probative value to indicate that the defendant is likely to engage in further criminal conduct. *Id.* at 654; *see also Commonwealth v. Cottle*, 426 A.2d 598, 601 (Pa. 1981) (holding that three arrests without convictions while on probation did not indicate that the probationer was "likely to commit a future crime if he was not imprisoned" because "no inference adverse to appellant can be drawn from the fact of those arrests").

Thus, a mere arrest, without other evidence pertaining to the probationer's underlying conduct, cannot constitute clear and convincing evidence that the accused presents a public safety threat or that s/he cannot be diverted through less restrictive means, which is the standard of proof that section 9771(c)(1)(ii) expressly requires. Our review of the record shows that the Commonwealth did not introduce any evidence of the April 15, 2025 arrest cited in the second petition to revoke beyond the mere fact of the arrest and P.O. Gilfus' representations that the pending charges were for simple assault, the victim was his mother, and that a magisterial district judge had determined that the Commonwealth presented a prima facie case at the preliminary hearing warranting continued proceedings. Although Nickel admitted that he had technically violated his probation, nothing in the admissions indicated that he conceded the statutory findings necessary to satisfy section 9771(c)(1)(ii) for purposes of resentencing. *See*

*Commonwealth v. Potoczny*, \_\_A.3d \_\_, 2026 WL 1102873, *9 (Pa. Super. 2026).

Without clear and convincing evidence that Nickel "committed a technical violation that involves an identifiable threat to public safety and … cannot be safely diverted from total confinement through less restrictive means," the trial court lacked authority to invoke subsection (c)(1)(ii) to sentence Nickel to a period of incarceration. *See* 42 Pa.C.S. § 9771(c)(1)(ii). The appropriate remedy for its consideration of mere prior arrests without any evidence of Nickel's underlying conduct or concomitant convictions is a remand for resentencing without consideration of these arrests. *Berry*, 323 A.3d at 656. As in *Berry*, while "it is apparent that the [trial] court considered other, legitimate sentencing factors," it is that court's task on remand to "extricate the prior arrests from the [] court's analysis," not ours. *Id.*

Judgment of sentence vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/13/2026